**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT RAYMOND CARMAN,<br><br>*Petitioner*,<br><br>v.<br><br>ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, *et al.*,<br><br>*Respondents*. | Civil Action No. 3:20-cv-01938 (ZNQ)<br><br>**OPINION** |

**QURAISHI, District Judge.**

Petitioner Robert Raymond Carman[1], a New Jersey State Prison inmate proceeding *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2007 state-court conviction for first-degree murder. (ECF No. 1 ("Pet.").) Respondents answered on the merits (ECF No. 10 ("Answer")), and Petitioner replied (ECF No. 19 ("Reply")). For the reasons set forth below, the Court will deny the Petition and will not issue a certificate of appealability.

## I. BACKGROUND

### *A. The Offense and Trial*

In the early morning hours of October 12, 2003, twenty-three-year-old Jacqueline Bodo was beaten with a wooden board and her body was left on railroad tracks in Manville, New Jersey, where a freight train severed it in half. *See State v. Carman*, No. A-2434-07, 2009 WL 4724644, at *1–*6 (N.J. Super. Ct. App. Div. Dec. 10, 2009). Petitioner had spent much of the preceding evening with the victim, had groped her and her sister at a Manville bar hours before her death,

[1]The judgment of conviction, indictment, and state appellate opinions spell Petitioner's surname "Carman"; some of his own filings use "Carmen." The Court uses "Carman," consistent with the judgment of conviction and this action's docket caption.

and was captured with her on a Dunkin' Donuts surveillance camera between 4:11 and 4:14 a.m. *Id.* at *1–*4. A warrant issued that evening authorized a search of Petitioner's home and person; the search yielded a pair of work boots with a spot of the victim's blood on the sole. *Id.* at *4–*5. Years later, while incarcerated on an unrelated matter, Petitioner told a fellow inmate, Eric Swofford, that he had beaten the victim, dragged her onto the tracks, and watched a train strike her. *Id.* at *5–*6.

A Somerset County grand jury indicted Petitioner for first-degree murder, N.J.S.A. 2C:11-3, and a jury convicted him following a nine-day trial before the Honorable Robert B. Reed, J.S.C. *Id.* at *1, *6. On August 13, 2007, Judge Reed sentenced Petitioner to an extended term of thirty-five years to life imprisonment, subject to an eighty-five percent period of parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2. *Id.* at *6; *State v. Carman*, No. A-2520-16, 2018 WL 2012107, at *1 (N.J. Super. Ct. App. Div. May 1, 2018).

***B. State Court Proceedings***

***1. Direct Appeal***

Petitioner appealed, arguing that: (1) the search warrant was issued without probable cause; (2) Judge Reed should have recused himself because he had, years earlier and while in private practice, represented Petitioner at a parole revocation hearing; (3) the court should have instructed the jury, under *State v. Hampton*, 61 N.J. 250 (1972), and *State v. Kociolek*, 23 N.J. 400 (1957), to weigh Petitioner's out-of-court statements to Swofford with caution; (4) the court should have charged lesser-included offenses; (5) a mistrial should have been declared when a juror was found to have discussed newspaper coverage of the trial; (6) crime-scene and autopsy photographs were unduly prejudicial; and (7) the cumulative effect of these errors denied Petitioner a fair trial. *Carman*, 2009 WL 4724644, at *13–*14 (point headings). The Appellate Division rejected each

argument and affirmed the conviction and sentence. *Id.* at *27. The New Jersey Supreme Court denied certification. *State v. Carman*, 201 N.J. 441 (2010).

### *2. Post-Conviction Relief*

Petitioner filed a *pro se* petition for post-conviction relief ("PCR") on August 25, 2010. Assigned counsel later filed an amended petition alleging that trial counsel was ineffective for failing to: (a) pursue further forensic examination of a fleece sweater and a latent fingerprint recovered at the victim's home; (b) investigate and call witnesses who would have supported the defense theory, including Petitioner's mother, Joan Carman, as an alibi witness; (c) retain an expert regarding reddened skin observed on Petitioner's torso; (d) raise a discrepancy in a surveillance-camera time stamp; (e) more fully argue for sanitizing Petitioner's prior convictions under *State v. Sands*, 76 N.J. 127 (1978), and *State v. Brunson*, 132 N.J. 377 (1993); and (f) seek an adjournment based on Petitioner's health. The PCR court denied the petition without an evidentiary hearing on October 1, 2012.

Petitioner appealed. The Appellate Division reversed in part, holding that Petitioner was entitled to an evidentiary hearing limited to whether trial counsel was ineffective in failing to investigate and call Mrs. Carman as an alibi witness, but affirmed the denial of PCR on Petitioner's remaining ineffective-assistance claims because they did not "demonstrate a reasonable likelihood of success on the merits even when viewed in the light most favorable to the defendant." *State v. Carman*, No. A-2669-12, 2015 WL 58877, at *6 (N.J. Super. Ct. App. Div. Jan. 2, 2015) (citing R. 3:22-10(b)). The matter was remanded "for the limited purpose of conducting" the alibi-witness hearing. *Id.* at *1, *8. The New Jersey Supreme Court denied certification. *State v. Carman*, 221 N.J. 492 (2015).

On remand, the PCR court held an evidentiary hearing on August 9, 2016, receiving testimony from Mrs. Carman, the engineer of the train that struck the victim, Petitioner's trial attorney, and the defense investigator. *Carman*, 2018 WL 2012107, at *2–*3. In a written opinion issued August 11, 2016, the PCR court again denied relief, finding that trial counsel and the investigator had exercised due diligence in attempting to locate Mrs. Carman — who had relocated to Florida shortly before trial without providing contact information — and that counsel had legitimate, independent strategic reasons not to call her even had she been available. *Id.* The court denied reconsideration on September 30, 2016, expressly finding Mrs. Carman "incredible," with "[a] motive to prevaricate," a "bizarre" demeanor, and "vague and inconsistent" testimony. *Id.* at *4.

Petitioner again appealed, and the Appellate Division affirmed, holding that "sufficient credible evidence in the record" supported the PCR court's findings on both the deficient-performance and prejudice prongs of *Strickland v. Washington*, 466 U.S. 668 (1984). *Carman*, 2018 WL 2012107, at *5–*7. The New Jersey Supreme Court denied certification. *State v. Carman*, 236 N.J. 34 (2018).

***C. This Habeas Proceeding***

Petitioner, proceeding *pro se*, filed the instant Petition on February 24, 2020, raising the eight grounds for relief described below. (Pet. at 18–52.) The matter was briefly administratively terminated for failure to pay the filing fee and reopened upon its receipt. (ECF Nos. 2–4.) Respondents answered on the merits on December 23, 2020 (ECF No. 10), and Petitioner replied on July 15, 2021 (ECF No. 19). The case was reassigned to the undersigned on June 28, 2021. (ECF No. 18.) It was again briefly administratively terminated in 2023 while Respondents clarified

the record as to one exhibit and then was promptly reopened. (ECF Nos. 22–24.) The matter has been ripe for disposition since the Reply was filed.[2]

***D. Petitioner's Claims***

Liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), the Petition raises eight grounds for relief: (1) the search warrant for Petitioner's home and boots was issued without probable cause; (2) Judge Reed's failure to recuse himself, or declare a mistrial, based on his prior representation of Petitioner violated due process; (3) the court's failure to give a *Hampton*/*Kociolek* instruction as to Petitioner's statements to Swofford violated due process; (4) the court's failure to declare a mistrial after Juror No. 13's exposure to news coverage violated the Sixth Amendment; (5) the admission of crime-scene and autopsy photographs violated due process; (6) the cumulative effect of the foregoing denied Petitioner a fair trial; (7) trial counsel was ineffective in the respects raised in Petitioner's first PCR petition; and (8) trial counsel was ineffective in failing to investigate and call Joan Carman as an alibi witness. (Pet. at 24–52.)

## II. LEGAL STANDARD

Section 2254(a) of Title 28 provides that a district court "shall entertain an application for a writ of habeas corpus [filed] by a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner is incarcerated at New Jersey State Prison pursuant to the judgment of conviction challenged here and was so confined when he filed the Petition. (Pet. at 1.) This Court accordingly has jurisdiction over the Petition under 28 U.S.C. §§ 2241 and 2254.

---

[2]Although Respondents were expressly authorized to move to dismiss the Petition on timeliness grounds, *see* Text Order, ECF No. 5 (Oct. 13, 2020), they instead answered on the merits without invoking 28 U.S.C. § 2244(d)'s one-year limitations period. Because that defense is not jurisdictional and may be forfeited, *Day v. McDonough*, 547 U.S. 198, 205 (2006), and because the Petition has been ripe for disposition for several years, the Court declines to raise the issue *sua sponte* and proceeds to the merits. *See id.* at 209–10 (recognizing a district court's discretion whether to consider an unraised limitations defense).

## III. DISCUSSION

### *A. Standard of Review Under AEDPA*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766-67, 773 (2010) (internal quotation marks omitted). For a claim "adjudicated on the merits" in state court, a federal court may not grant habeas relief unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is "contrary to" clearly established federal law if it applies a rule that contradicts governing Supreme Court precedent, or reaches a different result than the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A decision involves an "unreasonable application" of federal law where the state court identifies the correct governing rule but applies it unreasonably to the facts — a standard requiring more than mere error; the application must be "objectively unreasonable." *Id.* at 409–11. A petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The state court's factual findings are "presumed to be correct," and Petitioner bears the burden of rebutting that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Where, as here, the New Jersey Supreme Court denied certification without opinion, this Court "looks through" that summary disposition to the last reasoned state-court decision and presumes the higher court adopted the same reasoning. *Wilson v. Sellers*, 584 U.S. 122, 123 (2018). And where even the reasoned decision does not separately discuss a particular argument, the Court must ask only, "what arguments or theories . . . could have supported[] the state court's decision," and whether fairminded jurists could agree that those arguments are consistent with governing Supreme Court precedent. *Richter*, 562 U.S. at 102.

***B. Ground One: The Search Warrant and Suppression of the Boots***

Petitioner contends that the warrant authorizing the October 12, 2003 search — which yielded the boot bearing the victim's blood — issued without probable cause, in violation of the Fourth and Fourteenth Amendments. (Pet. at 24–26.) This claim is not cognizable on federal habeas review.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). The relevant inquiry is whether the state provided the opportunity to litigate the claim, not whether the state court's resolution of it was correct; relief remains unavailable even if the state court's ruling was mistaken. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). Only an unconscionable breakdown in the state's corrective process is "[ ] sufficient to surmount the *Stone* bar." *Id.* (citation omitted).

Petitioner suffered no such breakdown. He moved to suppress the evidence seized under the October 2003 warrants; the Honorable Paul W. Armstrong, J.S.C., conducted a hearing, made findings on the record, and denied the motion; and the Appellate Division reviewed and affirmed

that ruling on direct appeal, concluding that the facts before the issuing judge — Petitioner's earlier groping of the victim and her sister, his registered-sex-offender status and prior convictions, and his status as the last person believed to have been with the victim — were "amply sufficient to create a 'practical, common-sense' determination" of probable cause. *Carman*, 2009 WL 4724644, at *12 (quoting *State v. Johnson*, 171 N.J. 192, 214–15 (2002)). That Petitioner disagrees with the result does not mean he lacked a full and fair opportunity to litigate the claim. *Stone v. Powell* accordingly bars habeas relief on Ground One.

### *C. Ground Two: The Trial Judge's Prior Representation of Petitioner*

Petitioner next argues that his conviction is void because Judge Reed, who presided at trial and sentencing, had represented him at a parole revocation hearing years earlier while in private practice. (Pet. at 27–28.) Petitioner raised the issue at sentencing; Judge Reed, who did not recall the representation until his former firm confirmed it from its records, found no basis to recuse himself or declare a mistrial, and the Appellate Division affirmed, concluding that "the appearance of bias on the judge's part is minimal at best." *Carman*, 2009 WL 4724644, at *14.

The Due Process Clause guarantees a "fair trial in a fair tribunal," *In re Murchison*, 349 U.S. 133, 136 (1955), but the Supreme Court has cautioned that "most matters relating to judicial disqualification [do] not rise to a constitutional level," and that due process compels recusal only in the rare case presenting extreme facts — a direct, substantial pecuniary interest in the outcome, or a judge who has become "embroiled in a running, bitter controversy" with a litigant. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876, 881, 887 (2009) (internal quotation marks omitted). Nothing of that magnitude is presented by a single, unrelated administrative-hearing representation a decade removed and, on the uncontradicted record, entirely forgotten until independently verified. No Supreme Court decision clearly establishes that due process requires recusal on facts

like these, and a state court cannot unreasonably apply a rule the Supreme Court has never announced. *See Carey v. Musladin*, 549 U.S. 70, 76–77 (2006); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). The Appellate Division's rejection of Ground Two was therefore neither contrary to nor an unreasonable application of clearly established federal law.

***D. Ground Three: The Hampton/Kociolek Instruction***

Petitioner contends that the trial court's failure to instruct the jury, under *Hampton* and *Kociolek*, to weigh with caution his out-of-court statements to Swofford violated due process. (Pet. at 28–30.) Because trial counsel neither requested such a charge nor objected to its absence, the Appellate Division reviewed the claim only for plain error.[3]

The Appellate Division agreed that a *Kociolek* charge should have been given, but concluded, after canvassing the record — the DNA match between the victim's blood and Petitioner's boot, the Dunkin' Donuts footage placing Petitioner with the victim shortly before her death, defense counsel's extensive cross-examination of Swofford's credibility and motive to curry favor with the State, and the court's detailed general credibility instruction — that the omission was not "clearly capable of producing an unjust result." *Carman*, 2009 WL 4724644, at *17–*18.

Habeas relief for an instructional error is available only where "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," and "it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some constitutional right." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal quotation marks omitted). The complete omission of a cautionary instruction is

[3]Because trial counsel neither requested a *Kociolek* charge nor moved for a mistrial, the Appellate Division reviewed both claims only for plain error. *See Carman*, 2009 WL 4724644, at *15–*16, *19–*20. The Court need not decide whether that unpreserved posture forecloses habeas review under the adequate-and-independent-state-ground doctrine, because both claims fail even when addressed on the merits. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (a federal court may bypass a procedural-default question and deny a claim on the merits where that course is more efficient).

judged still more forgivingly than a misstatement. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). The Appellate Division applied precisely that kind of prejudice inquiry — asking whether, on the whole record, the missing instruction was reasonably likely to have affected the verdict—and reasonably concluded it was not, given the substantial evidence of guilt independent of Swofford's account. That conclusion is not an unreasonable application of *Estelle* and *Henderson*; it is a faithful one. Ground Three does not warrant relief.

### *E. Ground Four: Juror No. 13*

Petitioner argues that the trial court should have declared a mistrial when it learned, on the eighth day of trial, that Juror No. 13 had read and commented on newspaper coverage of the case. (Pet. at 30–32.) As with Ground Three, trial counsel did not seek a mistrial — he asked only that Juror No. 13 be excused, which the court did — and the Appellate Division reviewed the claim for plain error. The Court again need not resolve any resulting procedural-default question, *see supra* note 3, because the claim fails on the merits.

The Sixth Amendment guarantees an impartial jury, but "due process does not require a new trial every time a juror has been placed in a potentially compromising position," and the remedy for a juror's exposure to extraneous information — up to and including a mistrial — is committed to the trial court's sound discretion. *Smith v. Phillips*, 455 U.S. 209, 217, 221 (1982). Here, upon learning of the issue, Judge Reed individually questioned Juror No. 13 and every other juror, in counsel's presence; found that seven jurors knew nothing of the matter and that the remainder, having heard only that another juror had glanced at an article and joked about keeping a scrapbook, could each remain fair and impartial; and dismissed Juror No. 13 at both parties' request. *Carman*, 2009 WL 4724644, at *20–*24. Those findings, made after the trial court's own observation of the jurors, are entitled to a presumption of correctness that Petitioner has not

rebutted. 28 U.S.C. § 2254(e)(1). The individualized inquiry Judge Reed conducted is precisely what *Smith v. Phillips* contemplates, and the Appellate Division's approval of it was not an unreasonable application of that decision. Ground Four fails.

### *F. Ground Five: The Crime-Scene and Autopsy Photographs*

Petitioner argues that the admission of crime-scene and autopsy photographs deprived him of a fair trial. (Pet. at 32–34.) Defense counsel consented to all but one of the crime-scene photographs, objecting only to a single image, and separately objected to five autopsy photographs. *Carman*, 2009 WL 4724644, at *8–*9. After an N.J.R.E. 104 hearing, the trial court admitted the photographs — expressly declining to admit the most graphic images, including any depicting the victim's exposed internal organs — found them probative of the manner and timing of the fatal injuries, and gave the jury a cautionary instruction not to hold the manner of the victim's death against Petitioner. *Id.* at *9–*10, *25.

A state court's evidentiary ruling provides no basis for habeas relief unless it "so infused the trial with unfairness as to deny due process of law." *Lisenba v. California*, 314 U.S. 219, 228 (1941); *see also Estelle*, 502 U.S. at 70 (the admissibility of evidence under state law is not itself a basis for federal habeas relief). No clearly established Supreme Court precedent holds that photographic evidence of a homicide victim's injuries, admitted after a probative-value balancing and accompanied by a limiting instruction, offends due process. The Appellate Division's conclusion that the photographs "were not unduly prejudicial, especially considering that the prosecution did not display the most graphic images," *Carman*, 2009 WL 4724644, at *25, reflects a reasonable application of that standard. Ground Five does not warrant relief.

### *G. Ground Six: Cumulative Error*

Petitioner asks the Court to grant relief based on the cumulative effect of the errors alleged in Grounds One through Five. (Pet. at 34–36.) "Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict," and a habeas petitioner relying on cumulative error must therefore establish "actual prejudice." *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008) (internal quotation marks omitted). And non-errors do not aggregate into a constitutional violation at all. *Marshall*, 307 F.3d at 94. Of the claims addressed above, only the *Kociolek* omission — already found non-prejudicial standing alone — presents even a colorable error; the remainder identify no error at all. There is accordingly nothing of constitutional dimension to cumulate, and the Appellate Division's rejection of this claim, *see Carman*, 2009 WL 4724644, at *26, was not contrary to or an unreasonable application of clearly established federal law.

***H. Ground Seven: Ineffective Assistance of Trial Counsel (First PCR Petition)***

Petitioner's amended PCR petition alleged that trial counsel was ineffective in failing to: (a) pursue further forensic examination of a fleece sweater and an unmatched latent fingerprint recovered at the victim's home; (b) investigate and call witnesses supporting the defense theory; (c) retain an expert regarding the reddened skin observed on Petitioner's torso; (d) raise a fourteen-minute discrepancy in a surveillance-camera time stamp; (e) more fully argue for sanitizing Petitioner's prior convictions under *Sands* and *Brunson*; and (f) seek an adjournment based on Petitioner's health. (Pet. at 36–44.) The PCR court denied relief without a hearing, and the Appellate Division affirmed as to each of these claims — remanding only the alibi-witness claim addressed in Ground Eight, below — because they did not "demonstrate a reasonable likelihood of success on the merits even when viewed in the light most favorable to defendant." *Carman*, 2015 WL 58877, at *6 (citing R. 3:22-10(b)).

*Strickland* requires a petitioner to show both that counsel's performance fell below an objective standard of reasonableness and that the deficiency prejudiced the defense — that is, that there is a reasonable probability the result would otherwise have been different. 466 U.S. at 687–88, 694. AEDPA review of a *Strickland* claim is "doubly deferential": the question is not whether counsel's performance satisfied *Strickland*, but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 562 U.S. at 105 (internal quotation marks omitted); *Knowles*, 556 U.S. at 123. Because the Appellate Division's rejection of these sub-claims was terse, this Court must ask what arguments could have supported it. *Richter*, 562 U.S. at 102.

Reasonable arguments are readily apparent from the trial record. The fleece sweater yielded no forensic evidence connecting it to Petitioner, and the unmatched fingerprint on a nearby storage bin excluded, rather than implicated, him (Answer, ECF No. 10 at 40 (citing 4T182:6–15; Ra31 at 21)) — a fact counsel used affirmatively in summation to argue reasonable doubt (*id.* (citing 9T167:23–169:22)). The witnesses Petitioner faults counsel for not calling would have added little: Petitioner's height, on which he places great weight, was established through the victim's sister on cross-examination (*id.* at 41 (citing 7T110:7–11)), and counsel's chosen strategy — that the unsecured crime scene explained the blood on Petitioner's boot — was reasonably calculated to raise doubt without the risks additional, untested witnesses might have introduced (*id.* at 40–41 (citing 8T158:13–159:6; 9T186:3–189:16)). No expert was required to counter the State's lay description of reddened skin, which counsel challenged directly on cross-examination of the officers who observed it (*id.* at 41–42 (citing 5T48:21–49:12, 57:17–58:1; 4T206:2–207:6, 211:24–212:5)). The surveillance-camera discrepancy was addressed through two defense witnesses establishing that the victim was last seen alone, not with Petitioner (*id.* at 42 (citing

8T142:7–9; 8T147:5–10)). The *Sands*/*Brunson* claim — that counsel should have more fully argued to sanitize a prior terroristic-threats conviction alongside the sexual-contact conviction — is the kind of strategic line-drawing that "might be considered sound trial strategy" and rarely establishes deficient performance, *Strickland*, 466 U.S. at 689 (internal quotation marks omitted), particularly where, as the PCR court found, the terroristic-threats conviction would "hardly taint the murder conviction" (*id.* at 42 (quoting Ra29b at 31)). And the record confirms that counsel did request an adjournment, which he withdrew only after the court offered accommodations and at Petitioner's own expressed wish to proceed (*id.* at 43 (quoting Ra31 at 22)). On this record, fair-minded jurists could readily agree that Petitioner failed to overcome *Strickland's* strong presumption of reasonable professional judgment, and that in any event no sub-claim presents a reasonable probability of a different outcome given the largely uncontested DNA and surveillance evidence and Petitioner's admission to Swofford. Ground Seven does not warrant relief.

### *I. Ground Eight: Ineffective Assistance of Trial Counsel — Failure to Call Joan Carman as an Alibi Witness*

Petitioner's most developed claim is that trial counsel was ineffective in failing to investigate and call his mother, Joan Carman, who he contends would have testified that she saw him asleep at home between approximately 5:30 and 6:00 a.m. on October 12, 2003 — shortly before the 6:05 a.m. train passed the location where the victim's body was later found. (Pet. at 45–50.) Unlike Ground Seven, this claim received full adversarial testing: the Appellate Division reversed the PCR court's initial summary denial and remanded for an evidentiary hearing, reasoning that Mrs. Carman's account, considered together with statements from the train's engineer and conductor, made an alibi defense "a possibility" that required resolution through live

testimony rather than affidavits alone. *Carman*, 2015 WL 58877, at *7–*8 (relying on *State v. Porter*, 216 N.J. 343 (2013), and *State v. Jones*, 219 N.J. 298 (2014)).

At the August 9, 2016 hearing, the PCR court heard from Mrs. Carman, trial counsel, the defense investigator, and the train engineer. *Carman*, 2018 WL 2012107, at *2. The court found, and the Appellate Division affirmed as amply supported by the record, that trial counsel and his investigator had exercised due diligence in attempting to locate Mrs. Carman, who had relocated to Florida shortly before trial without providing a forwarding address or telephone number even to her own son, who remained in her New Jersey home. *Id.* at *5–*6. The lower court further found that counsel had sound, independent strategic reasons not to call her even had she been available: her account that Petitioner's clothing was "spotless" the morning after the murder was in tension with the blood found on his boot, raising the possibility that she had laundered evidence; and her own recollection of the relevant morning had shifted across interviews — from 6:00 a.m., to "either" 5:30 or 6:00 a.m., to 5:00–5:15 a.m. at the remand hearing itself. *Id.* at *6–*7. On reconsideration, the PCR judge — who had observed Mrs. Carman testify — found her "incredible," with "[a] motive to prevaricate," a "bizarre" demeanor, and "vague and inconsistent" testimony. *Id.* at *2.

These are precisely the kind of credibility and historical-fact findings, made by a court that saw and heard the witnesses, to which § 2254(e)(1) affords a presumption of correctness rebuttable only by clear and convincing evidence — a showing Petitioner has not attempted to make beyond reasserting that his mother should have been believed. *See Rice v. Collins*, 546 U.S. 333, 341–42 (2006) ("Reasonable minds reviewing the record might disagree" about a witness's credibility, "but on habeas review that does not suffice to supersede the trial court's credibility determination."). *Strickland* itself instructs that a strategic decision made after adequate

investigation is "virtually unchallengeable," 466 U.S. at 690, and the state courts' finding that counsel's decision not to call a witness he could not locate — and, on this record, would not have called even if he could — was reasonable is fully supported.

Nor did the Appellate Division unreasonably assess prejudice. Consistent with *Strickland's* totality-of-the-evidence approach, it considered the credibility of Mrs. Carman against the State's proofs and the interplay between her proposed testimony and the evidence actually admitted. *See State v. L.A.*, 433 N.J. Super. 1, 15–17 (App. Div. 2013) (drawing this framework from *McCauley-Bey v. Delo*, 97 F.3d 1104, 1106 (8th Cir. 1996)). Even crediting Mrs. Carman, her testimony would have accounted for Petitioner's whereabouts only from roughly 5:00 or 5:30 a.m. onward — after the Dunkin' Donuts recording placed him with the victim shortly after 4:00 a.m. and after a drug dealer received the victim's last phone call around 4:30 a.m. *Carman*, 2018 WL 2012107, at *7. It would not have explained the DNA-matched blood on Petitioner's boot, undermined Swofford's account of Petitioner's admission, or addressed Petitioner's own unprompted question to a passerby about "what was going on down by the railroad tracks" from a vantage point where nothing could be seen. *Id.* at *2. On this record, the Appellate Division's conclusion that Petitioner failed to show "a reasonable probability" of a different result, *id.*, is not merely reasonable — it is difficult to see how a contrary conclusion would have been. AEDPA's doubly deferential standard forecloses relief on Ground Eight.

***J. Certificate of Appealability***

Because this is a final order denying a § 2254 petition, the Court must determine whether a certificate of appealability should issue. 28 U.S.C. § 2253(c)(1)(A); 3d Cir. L.A.R. 22.2. A certificate may issue only upon "a substantial showing of the denial of a constitutional right," meaning Petitioner must show that reasonable jurists could debate whether the Petition should

have been resolved differently, or that the issues presented were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). For the reasons set forth above — including, as to several grounds, doctrinal bars that leave little room for reasonable debate, and, as to Ground Eight, a fully developed evidentiary record sustaining the state courts' findings — the Court concludes that jurists of reason would not find its assessment of any of Petitioner's claims debatable. No certificate of appealability will issue.

## IV. CONCLUSION

For the reasons expressed above, the Petition for a writ of habeas corpus is **DENIED**, and no certificate of appealability shall issue. An appropriate Order follows.

Date: September 28, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**